Bennie Lee SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 42495.

Court of Criminal Appeals of Texas.

Jan. 21, 1970.

Rehearing Denied March 11, 1970.

William G. Woodford, Houston, for appellant.

Carol S. Vance, Dist. Atty., and Phyllis Bell and Robert C. Bennett, Jr., Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is robbery; the punishment, enhanced under Art. 63, Vernon's Ann.P. C., life.

Able court appointed counsel on appeal sets forth in his brief filed in the trial court four grounds of error.

Ground No. 1 complains that the trial court erred in admitting testimony that a witness had identified appellant at a lineup conducted in the absence of his counsel, thereby unconstitutionally depriving appellant of his right to effective assistance of counsel and due process of law.

The only reference to a showup or lineup during the trial before the jury was during cross-examination by Hon. Bob Tarrant, appellant's trial counsel of his choice, of the prosecuting witness Charles Dunn, as shown by the following:

"Q. * * * Were you asked the question you recognize him by his eyes, you say, and your answer well, certainly. You recognize his face and voice. I recognized his voice at the showup over there when they had me come down * * *

"A. Sure.

"Q. Were you asked those questions and * * *

"A. At the showup they don't ask you those questions.

"Q. This is at the examining trial.

"A. Yes."

The only other reference to a lineup or showup found in the record prior to notice of appeal is in the transcript of the examining trial testimony which reflects that at the examining trial held April 3, 1968, the prosecuting witness was asked by Hon. Neil Lane, appellant's counsel at such trial, and answered:

"Q. You recognize him by his eyes, you say?

"A. Well, certainly. *You* recognize his face and his voice. I noticed his voice at the showup over there when they had me come down."

Ground of error No. 1 is overruled.

Ground of error No. 2 complains that the trial court erred in admitting in-court identification of appellant by one or more witnesses who had viewed appellant at one or more lineups conducted in the absence of counsel for appellant without first determining that such identification was not tainted by the illegal lineup but was of independent origin, thereby unconstitutionally depriving appellant of his right to effective assistance of counsel and due process.

The record on appeal does not reflect that any witness who identified appellant at the trial identified him at a lineup, or that appellant was identified by any witness at a lineup held in the absence of his counsel.

While the witness Dunn identified appellant at the examining trial and at the trial as the man who robbed him at gunpoint, there is no disagreement between the state and the defense that his identification was obviously weak. The state made no effort to bolster his identification by prior identification.

Charles Dunn was a clerk in charge of B. & B. Parkway Food Store located in Houston. A woman described as "small and skinny", wearing a scarf over her head and dark glasses, came into the store. A moment or two later a man entered and the woman came from the rear of the store to the checker stand where he was. The man pulled a pistol from underneath his shirt, pointed it at the complainant Charles Dunn and said: "Do me a favor and give me your bills." Mr. Dunn complied and the woman removed the drawer of the cash register and took a $20 bill from beneath and the couple fled together.

Patricia Boukmeyer owned and operated a laundry adjacent to the Food Store. She testified for the state that she saw appellant and a woman companion seated in a car in the parking lot in front of her place of business on the day and at the time of the robbery. They remained there about twenty to twenty-five minutes, and because of their suspicious actions the witness began to observe them closely.

The witness testified that the woman in the car was dressed in loose fitting slacks and a floral blouse and was skinny. She first got out of the car and walked toward the laundry where the witness was sitting watching. Upon being motioned by appellant the woman turned around and got back into the car. The witness then walked outside to her car and started picking up some trash. The car in which appellant and the woman were sitting was two parking spaces away. The witness returned to her laundry and continued to observe the couple. The man put his head back on the seat and "they acted funny," so the witness sat as close to the front of the laundry as she could, looked the car over and took down the number of the license plate. She described the car as pale yellow. Shortly after, the woman again got out of the car, put on some sun glasses and an orange scarf over her head and walked toward the grocery store. The man remained seated in the car but when

the witness looked back again in two or three minutes he was gone.

Shortly thereafter the witness heard clattering on the sidewalk and saw the man and woman running from the grocery store toward the car. The woman got in the driver's seat and the man paused on the sidewalk outside the door of the laundry about a foot from where the witness stood watching. The man had something in his hand and he looked toward the B. & B. Grocery Store. He then got into the car and the woman "backed out like mad" into Yale Street without even looking to see if any cars were coming. The witness realized what had happened and immediately ran down to the grocery store and gave the complainant the license number of the car she had just seen drive off.

The laundry operator identified appellant as the man she had observed in the pale yellow car that afternoon and identified State's Exhibit No. 2 (found in appellant's car at the time of his arrest) as the same cap the appellant was wearing when he came out of the grocery store. The witness also said he was wearing sun glasses at that time.

She further identified Shirley Shearer, who was brought into the courtroom for identification purposes only during appellant's trial, as the woman with the scarf, sun glasses and as the driver of the car.

The arresting officer testified that he had received a report over the police radio of the robbery of complainant's grocery store and that a car which had been reported as stolen was used in the robbery. At 9:00 P.M. on March 26, 1968, approximately four hours after the robbery, he saw the stolen automobile, which he described as a yellow and white Dodge and bearing the license number of the car reported as used in the hold-up, at a location about six miles from the scene of the crime. A woman was driving and the officer observed her pull up in front of a lounge, heard her blow the horn, and saw two men come out and get in the car. The

appellant got in on the driver's seat. The police thereupon stopped the vehicle. The man on the right jumped out and ran, and the appellant and the woman were arrested. A loaded 9 mm automatic pistol was found on appellant and a box of .38 ammunition was found in the car. The woman had a .38 revolver on her person. In the trunk of the car the police found a cap, identified as the one worn by the man outside the laundry, and sun glasses. Thirty-five dollars and one cent, in cash, was found on appellant at the time of his arrest.

There is nothing in the testimony of the witness Boukmeyer or elsewhere in the record to suggest that she attended any lineup in connection with this case or that she had ever made any prior identification of appellant or that her positive identification of both appellant and Shirley Shearer was not of independent origin based alone upon her observation at the time of the offense.

Ground of error No. 2 is overruled.

■ In view of the testimony of the witness Boukmeyer it would serve no purpose to grant appellant's request and suspend further proceedings pending a hearing in the trial court to determine whether a lineup was held in the absence of appellant's counsel at which Mr. Dunn identified appellant and if so whether his in-court identification was the fruit of the lineup which was illegal. Under the record before us the trial court and this court would be able to declare the belief that, if so, the error was harmless beyond a reasonable doubt. Martinez v. State, Tex.Cr.App., 437 S.W.2d 842, 847; Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (5 CLR 3089).

■ Grounds of error Nos. 3 and 4 relate to the proof of the prior convictions alleged for enhancement.

The state introduced certified copies of the official prison records of the Texas Department of Corrections including judgment, sentence, photograph and fingerprints, in the causes described in the indictment and it was stipulated that a fingerprint expert, if present, would testify that in his opinion a comparison of the known fingerprints of appellant and certified exemplified fingerprints in the prison records introduced as exhibits are identical and came from the same individual.

Appellant's ground of error No. 4, which complains that the state failed to prove that appellant is the same person who was convicted in the causes alleged, is overruled.

Ground of error No. 3 complains that the evidence is insufficient to sustain the allegation that the conviction on December 3, 1963, was for an offense committed after the conviction on February 16, 1961, became final.

■ The indictment alleged the offense of felony theft from Jacob Johnson committed *on or about* January 29, 1963. Appellant correctly contends that such an indictment is not alone sufficient to prove the date of the offense. Rogers v. State, 169 Tex.Cr.R. 239, 333 S.W.2d 383; Lee v. State, Tex.Cr.App., 400 S.W.2d 909.

Appellant cites and quotes from Urban v. State, Tex.Cr.App., 387 S.W.2d 396, wherein it was held: "The indictment was clearly hearsay. It constituted no proof." This holding is clearly wrong. Urban v. State is overruled.

Proof was offered that Jacob Johnson was manager of Askew Drug Store in January 1963.

Officer J. B. Burns testified that he investigated the theft on January 29, 1963, which took place in the year 1963, and he made the offense report.

Asked "You have no independent recollection when it took place do you?" Officer Burns answered: "Other than the fact I was there."

He further testified that he recorded in his official report that the offense occurred on January 29, 1963, at 10:35 P.M.

■ The evidence is sufficient to sustain the allegation that the conviction on December 3, 1963, was for an offense committed after February 1, 1961, the date the 1961 conviction became final. Platt v. State, Tex.Cr.App., 402 S.W.2d 898; Gomez v. State, Tex.Cr.App., 365 S.W.2d 176.

The judgment is affirmed.

MORRISON, Judge (concurring).

I concur with the affirmance of this conviction, but respectfully dissent to the gratuitous overruling of the opinion of this Court in Urban v. State, supra. That case was concerned with an entirely different question than that which is presented here. In Urban, it was incumbent upon the State to show that Urban had, within a year prior to the return of the indictment, thrice committed the same offense. This constituted an essential element of the offense of engaging in the business of bookmaking, Article 652a, Section 2, V.A.P.C. The State relied alone upon the indictment to prove such fact, and this Court held such proof to be insufficient.

In the case at bar (an Article 63, V.A. P.C., conviction), there was ample evidence as to the date of the commission of the prior offense alleged for enhancement.

A prior conviction is a historical fact. The proof of the commission of an offense is quite another thing.