**Donald Lynn KOTLAR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–84–446–CR.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 13, 1986.

Kenneth A. Korth, Victoria, for appellant.

Robert Bell, Dist. Atty., Edna and Daniel W. Shindler, Dist. Atty., Bay City, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

DORSEY, Justice.

Appellant was found guilty by a jury of criminal mischief, arising from the strangulation death of a $20,000 race horse. Punishment, enhanced by a prior conviction, was assessed by the jury at twenty years in the Texas Department of Corrections. On appeal, he asserts: (1) his confession was illegally obtained because of an improper arrest warrant; (2) the trial court erred by refusing to charge the jury on exculpatory statements; (3) the trial court erred in allowing the enhancement allegations before the jury; and (4) the evidence was insufficient to support the conviction. We affirm.

In appellant's tenth ground of error he urges that the evidence is insufficient to support his conviction. We will look at all of the evidence in the light most favorable to the verdict. *Houston v. State,* 663 S.W.2d 455 (Tex.Crim.App.1984). In order to prove the offense of criminal mischief

under TEX.PENAL CODE ANN. 28.03 (Vernon Supp.1986) it was necessary for the State to prove that appellant: 1) without the effective consent of Billy Bode, the owner; 2) intentionally or knowingly; 3) damaged or destroyed the tangible property of the owner. Appellant specifically asserts that the evidence was insufficient to show that he intentionally and knowingly acted to destroy the horse.

An individual acts intentionally, or with intent, when it is his conscious objective or desire to engage in the conduct or cause the result. TEX.PENAL CODE ANN. 6.03(a) (Vernon 1974). He acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE ANN. 6.03(b) (Vernon 1974). Intent can be inferred from the acts, words and conduct of the accused. *Beltran v. State,* 593 S.W.2d 688 (Tex. Crim.App.1980).

The evidence at trial showed that Billy Bode arrived at his stables on April 11, 1984, and found one dead horse, a severely cut horse and several other horses that had minor bruises on them.[1] He said that the dead horse was valued at a minimum of $20,000.00 and that he had given no one permission to destroy it. According to Bode, the horse was found with a lead shank around its neck with one end of the shank fastened to a wall in the stall. He described a lead shank as a rope about eight feet long which hooks into the bottom of a halter in order for one to lead a horse. The lead shank had a clasp or snap on its end through which the rope had been slipped. The resulting loop in the shank was around the animal's neck. The snap on the end of the shank had to be pulled open and snapped around the rope. Bode testified, "It fit snug in that rope so when the rope pulled against the snap there is no way of pushing that rope back through that hole. It fits snug. It was just nearly like a choke knot. The results would have been the same had it been a slip knot or the snap."

---

1. There is no evidence in the record to show how the injuries to the other horses occurred.

There was evidence that if a halter had been used the horse would not have been injured. There were halters outside each of the 15 stalls in Bode's stables where the dead horse was found. Dr. Erwin, the veterinarian who examined the horse, testified that the horse died as a result of the tightness of the rope around its neck, which he described as a "noose" on the neck. The lead shank fastened around the horse's neck was short, so that when the veterinarian arrived the horse was laying on its left side dead, with its head suspended off the ground by the shank. He further stated that the manner in which the lead shank was rigged around the neck of the horse would choke the horse if the rope was pulled to its full extension so as to tighten the noose. If the animal pulled its head away from the side of the stall to which it was fastened, the noose would tighten. Breaking the rope, the shank, above the clasp would not result in a loosening of the noose because the clasp through which the rope was passed held it securely. According to Erwin, the cause of death was either strangulation or a broken neck.

The veterinarian testified that the proper way of tying an animal was with a quick release knot, so if a problem developed one would merely pull on the rope to release the knot to free the animal. If an animal was tied in the manner this horse was tied, there was no means of releasing the animal if it pulled back against the rope.

Appellant's statement was that he intentionally and knowingly placed a rope around the horse's neck. There was evidence before the jury that the manner in which appellant secured the shank around the horse's neck was like a noose, and would choke a struggling animal.

A statement taken from the appellant and introduced by the State is as follows:

I was at my parents' house drinking beer with my brother and Pattie Mach. Pattie and my brother Robert Kotlar left at about 9:00 P.M. on Monday, April 10, 1984. About 10:00 P.M., I left my parents' house and went to Billy Bode's horse stables. When I arrived I went to look for some rope to tie up a horse. I found some rope near the stall where the horse was at. I tied the rope around the horse's neck. I found a step stool and then I crawled in a back window in the stall. I then tried to have sexual intercourse with the horse, but the horse would not stand still. I did not have sex with the horse. *I then tried to untie the rope, but I could not untie it. The horse was still standing at this time.* After I could not untie the rope, I got scared and ran back home. When I got home, I smoked a cigarette and went to sleep. This statement is true and correct. [Emphasis added.]

Thus, in his statement the appellant admitted placing the rope around the horse's neck. Appellant complains of a lack of evidence to show the requisite intent to destroy the horse. We believe, however, that the evidence of the type of noose around the horse's neck and the unexplained injuries to the other horses was sufficient to allow the jury to infer that appellant acted knowingly and intentionally.

After carefully reviewing the record, we find the evidence was sufficient to support appellant's conviction. Appellant's tenth point of error is overruled.

In grounds of error two and three, appellant alleges that the trial court erred in failing to give a requested instruction and charge on exculpatory statements. Appellant maintains that the sentences underlined above are exculpatory because they negate the requisite intent to destroy the horse.

It is well settled that, where the State introduces statements into evidence which are exculpatory, it is ordinarily incumbent upon the court to instruct the jury that the statements are regarded as true unless disproved. *Daniel v. State*, 668 S.W.2d 390, 393 (Tex.Crim.App.1984).

■ Appellant's requested instruction and charge required the jury to acquit the defendant unless the State disproved the

statement: "I then tried to untie the rope, but I could not untie it. The horse was still standing at this time." The State does not have the burden, in order to prove its case, of proving that appellant did not try to untie the rope. Although the requested instruction was not a correct statement of the law, it was sufficient to call the trial court's attention to the omission of a charge on exculpatory statements. *Torres v. State,* 585 S.W.2d 746, 750 (Tex.Crim. App.1979); TEX.CODE CRIM.PROC.ANN. art. 36.15 (Vernon Supp.1986).

The question, then, is whether appellant's statement was exculpatory so as to require that a charge be given. A statement is exculpatory when the accused has admitted doing the acts which constitute the gravamen of the offense but which clears or tends to clear him of guilt. *Palafox v. State,* 608 S.W.2d 177, 181 (Tex.Crim. App.1979). It is necessary that the confession amount to an admission plus an assertion that would exculpate the accused from the crime charged. *Id.* The statement is not exculpatory unless it actually exculpates. *Daniel,* 668 S.W.2d at 393.

In his statement, appellant admitted intentionally placing the rope around the horse's neck. There is nothing in the statement which clears or tends to clear appellant of fault or guilt. The appellant argues that the language in his statement that he tried to untie the rope negates the culpable mental state of intentionally and knowingly destroying the horse required to prove the crime. Although the appellant's statement implicitly denies or casts a cloud on the requisite mental state after the noose had been already placed around the horse's neck, there is nothing in the statement that explicitly denies the mental state necessary for conviction at the time the horse was first tied. He intentionally tied the horse in the manner that caused him to choke and left the horse in that condition. *See Daniel,* 668 S.W.2d at 393 (and cases discussed); *Moulton v. State,* 508 S.W.2d 833 (Tex.Crim.App.1974); *Simon v. State,* 488 S.W.2d 439 (Tex.Crim.App.1972); *More v. State,* 692 S.W.2d 912 (Tex.App.—Houston [14th Dist.] 1985, no pet.). Because the statement was not exculpatory, the trial court did not err in refusing to so charge.

Appellant's points of error two and three are overruled.

■ In appellant's fourth ground of error he asserts that the trial court erred in failing to give Requested Special Charge No. 5 which stated:

Now, if you find from the evidence that the defendant left the scene of the damage or destruction of the horse before the horse choked on the rope, if you find it did, and at the time the defendant left the scene the horse was standing and not choking, or if you have a reasonable doubt thereof, you must find the defendant did not intentionally and knowingly damage or destroy the tangible personal property, a horse, and must consider whether or not the defendant is guilty of wrecklessly [sic] causing the damage or destruction of the property.

Appellant's statement was before the jury for their consideration. The trial court included instructions and an issue on the lesser included offense of reckless damage or destruction. We find no error in the failure of the trial court to submit the exact instruction requested by appellant. The type of mechanism placed around the horse's neck by the appellant insured that the horse would die unless the noose itself was cut or other action taken. The presence of the appellant while his snare worked its effect was not necessary; conversely, the condition of the horse at the time the appellant left the scene is not critical to the State's case. His fourth ground of error is overruled.

■ In appellant's first ground of error he contends that the arrest warrant failed to sufficiently set forth a basis upon which a finding of probable cause could be made. He argues that the affidavit does not show the basis for the officer's belief that the appellant committed the crime. Officer Larry Hensley's affidavit stated that based upon an attached offense report he either had personal knowledge or reason

to believe that appellant was guilty of destroying or damaging the horse. The offense report was attached to the affidavit when Hensley went to the judge for the warrant. The report showed that one of the investigating officers talked with Billy Bode, the horse owner. According to Bode, a similar incident had occurred involving "the Kotlar boys" approximately seven years before. The report further showed that Hensley and another officer searched the area and followed footprints which lead to and from the Bodes' pasture to a fence line belonging to the Kotlar family. This investigative report was before the judge when he made his determination to issue the arrest warrant.

In *Jones v. State,* 568 S.W.2d 847 (Tex. Crim.App.1978), the Court of Criminal Appeals held that a determination of the sufficiency of an arrest warrant affidavit's statement of probable cause is limited to the four corners of the affidavit. *But see Reyes v. State,* 694 S.W.2d 556 (Tex.App.—Corpus Christi 1985, pet. filed). In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court set forth a "totality of circumstances" test to establish whether probable cause exists. The Supreme Court said that the task of the magistrate in determining probable cause is to make a commonsense determination, given all the circumstances set forth in the affidavit, if there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. The duty of a reviewing court is to ensure that the magistrate had a substantial basis to conclude that probable cause existed. *Id.* We find that the information before the magistrate was sufficient to establish probable cause. The attached offense report, while not within the "four corners" of the affidavit per se, was included as part of the information which Officer Hensley presented to the magistrate when he sought the warrant. Appellant's first ground of error is overruled.

■ Appellant's fifth through ninth grounds assert error involving the enhancement portion of the indictment and charge. The indictment charging appellant with criminal mischief contains an enhancement paragraph that reads as follows:

> On the 11th day of January, 1982, in the 329th District Court of Wharton County, Texas, in a case numbered upon the docket of said court No. 8819 and styled "The State of Texas vs. Donald Kotlar," the said Donald Kotlar was duly and legally convicted in said last named court of a felony, to-wit: Burglary;

Appellant alleges, in grounds five and eight, that because the information and judgment admitted into evidence showed that appellant was convicted of burglary of a business, an offense which does not exist in Texas, the enhancement paragraph should not have been submitted to the jury or, in the alternative, the jury should have been instructed that if they found no such offense existed they could not consider the enhancement paragraph.

The allegation and proof of appellant's guilt of the offense of burglary was sufficient to prove a crime existing in the State of Texas. *Ex Parte Rice,* 629 S.W.2d 56, 58 (Tex.Crim.App.1982). The fact that the State chose to allege and prove the surplusage "of a business," does not in any way nullify the proof and conviction of the crime of burglary. Appellant's fifth and eighth grounds of error are overruled.

■ Appellant's sixth ground of error alleges that the enhancement paragraph failed to inform him of the exact nature of the offense of which he had been previously convicted.

Allegations of prior convictions are not part of the substantive offense, but are merely guides for the court in fixing final punishment in the event of conviction. *Passmore v. State,* 544 S.W.2d 399, 403 (Tex.Crim.App.1976). Listing the type of offense in the enhancement paragraph is primarily important in showing a prior felony conviction. The crucial factor in determining what may be used for enhancement is the fact that there has been a final felony conviction. *Ex parte Rice,* 629

S.W.2d at 58. Allegations should include the court in which the conviction was obtained, the time of the conviction and the nature of the offense. *Hollins v. State,* 571 S.W.2d 873 (Tex.Crim.App.1978).

The enhancement paragraph in the case at bar indicates the court in which appellant was convicted, the cause number, the county, the style of the cause and the felony charge of burglary. The next enhancement paragraph also alleges that the conviction became final prior to the commission of the primary offense. We hold that the enhancement paragraph sufficiently apprised the appellant of the exact nature of the offense alleged for enhancement purposes. Appellant's sixth ground of error is overruled.

■ Appellant's seventh ground of error alleges that there was a fatal variance between the allegation and proof of the conviction used for enhancement. A variance between an allegation of the indictment and proof is a material and fatal variance only if it would mislead a defendant to his prejudice when alleging a prior conviction for enhancement purposes. *Hall v. State,* 619 S.W.2d 156, 157 (Tex.Crim.App.1980) (Opinion on State's Motion for Rehearing). The information and sentence in that cause were admitted into evidence and show that appellant was convicted of burglary of a business. We do not find any fatal variance between the indictment alleging burglary and the proof offered to show a prior conviction for burglary of a business. Appellant's seventh ground of error is overruled.

■ Appellant's ninth ground of error alleges the trial court erred in admitting, for enhancement purposes, the information which served as the basis for the prior conviction. Appellant argues that the information was inadmissible hearsay and its admission was reversible error. Appellant relies on *Urban v. State,* 387 S.W.2d 396 (Tex.Crim.App.1965) and *McCaleb v. State,* 403 S.W.2d 134 (Tex.Crim.App.1966) in support of this proposition.

*Urban* and *McCaleb* are distinguishable as both involve the introduction into evidence of the indictment of the case presently under trial. *Urban* was expressly overruled in *Smith v. State,* 450 S.W.2d 618 (Tex.Crim.App.1970).

In the instant case, appellant complains of the introduction of the information of a prior offense used for enhancement at the punishment stage of his trial. The State also introduced other evidence of the prior conviction. We can see no harm suffered by the accused by the introduction of the information at the punishment stage under the circumstances. *See Hughes v. State,* 493 S.W.2d 166 (Tex.Crim.App.1973).

The judgment of the trial court is AFFIRMED.