**Isaiah RIDEAUX, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 14–15–00317–CR**

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed June 28, 2016

---

Dustin Galmor, Beaumont, TX, Alex Bill III, Winnie, TX, for Appellant.

Wayln G. Thompson, Beaumont, TX, for State.

Panel consists of Justices Christopher, McCally, and Busby.

## OPINION

Sharon McCally, Justice

Appellant Isaiah Rideaux robbed a pool hall at gunpoint, and a jury convicted him of aggravated robbery. He pleaded true to multiple enhancements, and the jury assessed punishment at life imprisonment. Appellant challenges his conviction and punishment in three issues, arguing that (1) the trial judge was disqualified from presiding over the trial; (2) appellant was denied a fair trial because a juror slept through a portion of the trial; and (3) the trial court allowed the State to allude to matters outside of the record during punishment.

We affirm.

### I. DISQUALIFICATION OF TRIAL JUDGE

In his first issue, appellant contends the trial judge was disqualified because he had been the acting criminal district attorney and therefore was "counsel for the State" during the pendency of the indictment. *See* Tex. Const. art. V, § 11 ("No judge shall sit in any case ... when the judge shall have been counsel in the case."); Tex.Code Crim. Proc. Ann. art. 30.01 ("No judge ... shall sit in any case ... where he has been of counsel for the State or the accused.").

At the beginning of the trial, the trial judge made the following statement:

I need to make a statement for the record, please. This is Cause No. 13–16230, the State of Texas versus Isaiah Rideaux. This involves an offense that occurred on the 29th—it was alleged to have occurred on the 29th day of December, 2012. At that point in time, I was employed in the Jefferson County Criminal District Attorney's Office on January 1st of 2014 for a period of 24 days. I was the acting Criminal District Attorney in Jefferson County. I know

absolutely nothing about this file from the District Attorney's standpoint. I've never seen it before. I have never consulted with any of the attorneys for the prosecution of this file; and, therefore, neither legally or factually do I consider myself to be disqualified from presiding as the trial judge in this case, and I wanted to make that statement for the record.

Appellant contends that the trial judge was disqualified because he was not merely an *assistant* district attorney, but *the* district attorney. Appellant argues that a "District Attorney is *the* counsel for the State and it is mandatory that the very person represent the State in all criminal cases," citing Article 2.01 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 2.01 ("Each district attorney shall represent the State in all criminal cases in the district courts of his district...."). Thus, appellant contends that the trial judge's employment as the county's district attorney during the pendency of the indictment is a bright line requiring disqualification. We disagree.

In *Gamez v. State,* the Court of Criminal Appeals held that to be "counsel for the State," the prosecutor must "*actually have participated in the very case* which is before" the judge. 737 S.W.2d 315, 319 (Tex. Crim.App.1987). Appellant cites to no court decision that has distinguished between an assistant district attorney and the district attorney. The Court of Criminal Appeals has not made such a distinc-tion. Indeed, the court has used the broad term "district attorney" when describing the rule: "[T]he mere fact that a judge was district attorney at the time of the offense or at the time that the accused was examined or indicted does not work a disqualification if, when district attorney, he had nothing to do with the prosecution." *Id.* (quotation omitted); *see also Lee v. State,* 555 S.W.2d 121, 124 (Tex.Crim.App. 1977) ("The mere fact that one was *the* district or county attorney when a criminal case is pending in a court in that county does not ipso facto disqualify him as a judge to preside over the trial of that case." (emphasis added)).[1]

■ A trial judge may be disqualified if the judge actually participated in the case "in any manner in the preparation or investigation" of the case while serving as the district attorney. *Lee,* 555 S.W.2d at 125. For example, in *Lee* the trial judge was disqualified because while employed as the chief of the trial division of the district attorney's office, he sent a letter to defense counsel stating that he had reviewed the case, it was a "very serious offense," the defendant's record was "deplorable," and he would not recommend less than a life sentence. *Id.* at 122–23. The judge had no independent recollection of the case and the letter was the only document in the three-inch thick case file indicating that the judge had participated in the case. *Id.* at 124. The letter by itself was sufficient to show that the trial judge actually had investigated the case

---

1. The Supreme Court of the United States recently adopted a similar rule as a matter of federal constitutional law, holding that the Due Process Clause of the Fourteenth Amendment is violated "when a judge earlier had significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case." *Williams v. Pennsylvania,* —— U.S. ——, 136 S.Ct. 1899, 1905, 195 L.Ed.2d 132, 2016 WL 3189529, at *5 (2016). Applying this test, the Court concluded that a judge violated due process by hearing a defendant's petition for post-conviction review because the judge, while serving as district attorney, had approved a prosecutor's request to seek the death penalty against that defendant. *Id.* at 1907, at *7. We note that appellant has not alleged a federal constitutional violation in this case.

and participated in decisions made in the office relating to the case; thus, the trial judge was "counsel for the State" under the Texas Constitution and Code of Criminal Procedure. *Id.* at 125.

As a contrary example, in the murder case of *Rodriguez v. State,* the Court of Criminal Appeals held that a trial judge was not disqualified even though the judge had been a first assistant to the criminal district attorney and was "in charge of capital prosecutions" at the time the complaint was filed. 489 S.W.2d 121, 123 (Tex. Crim.App.1972). The court reasoned that there was no showing in the record that the judge had "actually investigated, advised or participated in this case in any way." *Id.* Thus, the judge was not "counsel in the case as contemplated by the constitutional and statutory provisions." *Id.* (quotation omitted).

Here, the judge denied any knowledge about the case and denied consulting with any of the attorneys on the case. Nothing in the record indicates that the trial judge actually participated in the case during the twenty-four days he was the acting district attorney. The fact that the trial judge was *the* district attorney, as opposed to an assistant district attorney, is not dispositive. *See Gamez,* 737 S.W.2d at 319; *Lee,* 555 S.W.2d at 124. Thus, the judge was not disqualified under the Texas Constitution or Code of Criminal Procedure.

Appellant's first issue is overruled.

## II. SLEEPING JUROR

█ In his second issue, appellant contends the trial court erred by denying his motion for a mistrial. He argues he was denied a fair trial because a juror slept through a portion of the trial. The State contends that appellant's motion for a mistrial was not timely to preserve error, and in any event, the record is insufficient to resolve the issue. We agree that the record is insufficient to conclude that the trial court erred.

### A. Background

After the State asked to approach the bench during the sole day of guilt—innocence testimony, the following exchange occurred:

THE COURT: Sorry. Tony, would you please wake the juror up.

THE BAILIFF: There we go.

THE COURT: Are you having trouble staying awake, ma'am?

JUROR: Mm-mm.

THE COURT: Pardon me?

JUROR: Mm-mm.

THE COURT: Well, I want you to do the best we can. We are about to take a lunch break, and I want you to stay awake and attentive to the testimony that's going on in the courtroom, please; all right? You understand?

JUROR: Yes, sir.

THE COURT: All right. All right. You may proceed, Counsel.

When the court took a lunch break, appellant moved for a mistrial. Appellant argued, "I don't know how long she was sleeping, but apparently she was obviously not paying attention." The trial court denied the motion.

### B. Standard of Review and Legal Principles

█ "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State,* 284 S.W.3d 880, 884 (Tex.Crim.App.2009) (quoting *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App.2004)). "Whether an error requires a mistrial must be determined by the particular facts of the case." *Id.*

■ We review a trial court's denial of a mistrial for an abuse of discretion. *Id.* Under this standard of review, we view the evidence in the light most favorable to the trial court's ruling. *Id.* "The ruling must be upheld if it was within the zone of reasonable disagreement." *Id.*

■ The First Court of Appeals has held that a trial court has "considerable discretion in deciding how to handle a sleeping juror." *Ryser v. State,* 453 S.W.3d 17, 38 (Tex.App.—Houston [1st Dist.] 2014, pet. ref'd) (quotation omitted). Some factors to consider may include whether the sleeping juror missed large portions of the trial or whether the portions missed were particularly critical. *Id.*

## C. Insufficient Record

For purposes of this appeal, we assume without deciding that appellant's motion for a mistrial during the lunch break preserved error under Rule 33.1 of the Texas Rules of Appellate Procedure.[2] But the record is nonetheless insufficient to determine that the trial court abused its discretion.

■ "Generally, the appealing party carries the burden to ensure that the record on appeal is sufficient to resolve the issues presented." *London v. State,* No. PD–0480–15, 490 S.W.3d 503, 508, 2016 WL 2941060, at *3 (Tex.Crim.App. May 18, 2016). "The failure to provide a sufficient appellate record precludes appellate review of a claim." *Id.* An appellant may file a motion for new trial or a formal bill of exception to develop facts necessary to present a sufficient record on appeal. *See id.* at 507–09, at *3–4; *see also* Tex.R.App. P. 21.2; Tex.R.App. P. 21.3(g)

Here, the record reveals only that the trial court asked the bailiff to wake up a juror. The trial court admonished the juror to stay awake and pay attention, and the juror responded that she understood. The trial court then took a lunch break in the proceedings. No further sleeping incidents are apparent from the record. The record does not reveal how much testimony the juror missed, if any, though the record reflects a morning break in proceedings. Without information about how long the juror might have slept, it is impossible to determine whether any missed testimony was critical. Appellant did not file a motion for new trial or make a bill of exception to further develop the record.

Under these circumstances, we cannot determine that the trial court abused its discretion by denying appellant's motion for a mistrial. *See Thieleman v. State,* No. 02–03–00141–CR, 2006 WL 744282, at *3 (Tex.App.–Fort Worth Mar. 23, 2006, pet. ref'd) (mem. op., not designated for publication) (holding that the record was

---

2. *Compare Thieleman v. State,* 187 S.W.3d 455, 458 (Tex.Crim.App.2005) (holding that the appellant preserved error about a sleeping juror by moving for a mistrial at the conclusion of the guilt phase of the trial when a juror had "slept continuously throughout the trial"), *with Melendez v. Exxon Corp.,* 998 S.W.2d 266, 279 (Tex.App.–Houston [14th Dist.] 1999, no pet.) (holding that Exxon failed to preserve error by waiting until after the verdict and including the complaint about a sleeping juror for the first time in a motion for new trial), *and Ocon v. State,* 284 S.W.3d 880, 886–87 (Tex.Crim.App.2009) (holding that the appellant forfeited appellate review concerning jury misconduct when he moved for a mistrial without asking to question the juror about the misconduct because questioning the juror would have been a "less drastic alternative" to a mistrial), *and James v. State,* No, 14–98–01083–CR, 2000 WL 123771, at *1 (Tex.App.–Houston [14th Dist.] Feb. 3, 2000, no pet.) (not designated for publication) (overruling the appellant's complaints that the trial court erred by not dismissing a sleeping juror and not permitting the appellant to question the juror during trial; holding that the appellant was required to file a motion for new trial to develop evidence concerning a sleeping juror).

insufficient to establish an abuse of discretion in denying the defendant's motion for a mistrial because, although counsel's statement that a juror "slept continuously throughout the trial" was some evidence of that fact, no other witnesses testified about the issue and there was no bill of exception to develop the record).

Appellant's second issue is overruled.

## III. ALLUDING TO MATTER OUTSIDE THE RECORD

■ In his third issue, appellant contends the trial court erred by overruling his objection to the State's reference to a matter outside the record. Appellant contends that when the State cross-examined appellant's sister during the punishment phase of the trial, the State "implied to the jury that appellant had been to the penitentiary for aggravated robbery in the past." First, we review the alleged error. Then, we hold that any possible error was harmless.

### A. Background

During the punishment phase of the trial, appellant pleaded true to four prior felony convictions. The State introduced pen packets for the convictions. One of these convictions resulted from a guilty plea to robbery after appellant had been indicted for aggravated robbery.

The State cross-examined appellant's sister about what she thought would be an appropriate punishment in this case. Then, the State questioned her as follows:

THE STATE: And what if you found out that this person that had done this to a family member had done this before and had been to the penitentiary before, what do you think ought to happen to that person?

DEFENSE COUNSEL: Objection, Your Honor. I'm going to have to—we don't know that this exact situation's

happened before with a gun or—we have no facts on the other robberies.

THE COURT: I understand. I'll overrule the objection.

THE STATE: What do you think ought to happen? If somebody had been convicted of a robbery before and then they commit another aggravate—if they commit an aggravated robbery after that, what do you think ought to happen to that person?

### B. No Harm

■ Even if we were to assume that the State's reference to "done this before" amounted to a comment outside the evidence—that appellant had served time for an aggravated robbery, rather than a robbery—then the next step is to review the record for harm under Rule 44.2(b). *See Freeman v. State*, 340 S.W.3d 717, 728 (Tex.Crim.App.2011) (citing Tex.R.App. P. 44.2(b)). If the error did not affect appellant's substantial rights, it must be disregarded. *See* Tex.R.App. P. 44.2(b); *Freeman*, 340 S.W.3d at 728. To determine whether appellant's substantial rights were affected, we balance the following factors: (1) the severity of the misconduct, i.e., the prejudicial effect; (2) any curative measures; and (3) the certainty of the punishment assessed. *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex.Crim.App.2000). Balancing these factors, we conclude that appellant has not suffered harm.

The prejudicial effect of the reference to "done this before" was minimal because the State did not explicitly contend that appellant had served time for an *aggravated* robbery, and appellant pleaded true to a prior conviction for robbery. The comment was brief, and the State did not emphasize it. These facts weigh against a finding of harm. *See Freeman*, 340 S.W.3d at 728–29 (reasoning that the argu-

ment outside the record was not harmful largely because the comment was brief, the State did not emphasize it, and the State did not intend to deprive the appellant of a fair trial).

Further, the State cured its own comment by immediately rephrasing the question. The State asked what should happen to a person who "had been convicted of a *robbery* before and then they commit another aggravate—if they commit an aggravated robbery after that." (emphasis added). The State also clarified during its closing argument that the difference between appellant's prior conviction for robbery and the new one for aggravated robbery would be that a deadly weapon was not used during the prior offense. Thus, the State dispelled any suggestion that appellant had "done this before," i.e., served time for an aggravated robbery. These facts weigh against a finding of harm. *Cf. Martinez,* 17 S.W.3d at 693 (even though there was no curative instruction, finding error harmless in part because the State did not emphasize the erroneous comments).

Finally, although the jury assessed the maximum punishment of life imprisonment, the certainty of the punishment is not undermined by the State's comment about appellant having "done this before." The State's evidence at punishment included appellant's prior felony convictions. The State emphasized appellant's four consecutive felony convictions, including one for robbery. The State argued that appellant "step[ped] it up a notch" with the aggravated robbery in this case and that appellant was only remorseful after the jury found him guilty. We conclude that the inadvertent, and ultimately corrected, impression that appellant may have committed a prior aggravated robbery was not so significant as to undermine the certainty of punishment. *See id.* at 693–94 (hold-

ing that any error was harmless given the "mildness" of the prosecutor's comments and the strength of the evidence supporting the defendant's death sentence).

Appellant's third issue is overruled.

## IV. CONCLUSION

Having overruled each of appellant's issues, we affirm the trial court's judgment.