# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00736-CR

---

**David Anthony Lockett, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 20TH DISTRICT COURT OF MILAM COUNTY
### NO. 28,082, THE HONORABLE JOHN YOUNGBLOOD, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellant David Anthony Lockett pleaded guilty to assault on a peace officer pursuant to a plea agreement. *See* Tex. Penal Code § 22.01(a)(1), (b)(1). As part of the agreement, the State consented to the trial court's consideration of two unadjudicated offenses during a hearing to determine the amount of restitution owed by Lockett to Tykeisha Walker, the victim of the unadjudicated offenses, and dismissed two additional charges for offenses allegedly committed by Lockett against Walker. *See id.* § 12.45(a) (barring prosecution for unadjudicated offenses considered during sentencing hearing with State's consent). Following three hearings, the trial court ordered Lockett to pay $2,809.10 in restitution to Walker. The trial court gave Lockett permission to appeal its restitution order. *See* Tex. R. App. P. 25.2(a)(2)(B) (authorizing appeal with trial court's permission in plea-bargain case). In two issues, Lockett contends that the trial court abused its discretion in determining the amount of restitution because the amount

encompassed losses (1) resulting from the dismissed charges and (2) that were not proximately caused by him. We affirm the trial court's restitution order.

## BACKGROUND

During the restitution hearings, the trial court considered two unadjudicated offenses—for which Lockett admitted guilt as required by subsection 12.45(a)—committed against Walker: continuous family violence (trial court cause number CR27,979) and repeated violation of a protective order (trial court cause number CR27,980). *See* Tex. Penal Code §§ 12.45(a), 25.11 (setting forth elements of continuous violence against family), .072 (setting forth elements of repeated violation of certain court orders in family-violence case).

Walker, the State's only witness, testified during the first and third hearings about expenses she incurred as a result of Lockett's actions.[1] She and Lockett were in a relationship for almost five years, and she was "the victim in several cases involving" him. The losses for which she sought restitution arose from items that Lockett stole or broke as well as her need to stay at hotels and buy new clothes "while he was stalking [her]." She testified, "Every time I tried to go home, he would chase me and I had to go on high[-]speed chases from him[,] and I was not allowed to go home."

As proof of Walker's expenses, the State at the first hearing offered—and the trial court admitted into evidence—her bank statements from "her time with" Lockett. She identified various listed charges, including ATM withdrawals and Cash App payments, as being for either hotel rooms, clothes for her and her son, or personal-hygiene products. All of her purchases stemmed from "incidents caused by Mr. Lockett that made [her] unable to go to [her] home and

---

[1] Lockett was unable to appear at the second hearing, which was consequently reset.

so [she] either had to stay at a hotel or buy things because [she was not] able to get items from [her] home." She also spent $145.64 for a new phone because Lockett "literally called [her] phone 24/7 around the clock." In total, she requested $2,890.14 in restitution.

As the first hearing concluded, the trial court on its own motion continued the proceeding to allow the parties to obtain subpoenas because the court was "concerned about the quality of the evidence that's been admitted in terms of proving exactly what was spent." The trial court addressed Walker:

> I can see not wanting to live in your house while this is going on, that's a reasonable concern. But it could have been easily set up to have an officer accompany you to the house and get your clothes and the personal items and what not, food, having to go buy new clothes for yourself and the child, that's a stretch of reasonableness in my mind, so going forward, y'all can do with that what you will.

At the start of the third hearing, the State announced that it had obtained Walker's hotel bills, which the prosecution represented totaled $2,809.10. Defense counsel objected and responded that he had received three affidavits from hotels purportedly averring that Walker's name had not been found in their records. Neither the bills nor affidavits were admitted into evidence.

Walker testified about the bills, which she had gotten from the WoodSpring Suites in Killeen, Texas—an hour's drive from her house—and which reflected the dates on which she had stayed at the hotel. She stayed at the hotel "each night on the[] records" because she was "afraid for [her] life" and feared that if she went home, Lockett "was going to kill [her] or set [her] house on fire with [her] in it or who knows." Although she stayed at the hotel on December 5, 2021, she was at her house around midnight to pick up clothes because she "didn't have any money to buy any[ ]more" and hoped that Lockett would be sleeping.

3

Haywood Sawyer, a criminal-defense investigator, testified about his investigation on Lockett's behalf. Sawyer testified that he had spoken with the manager of the WoodSpring Suites in Killeen and had served subpoenas to both the Comfort Inn and Regency Inn but did not "leave with any records." On cross-examination, he testified that he did not know when the people with whom he spoke began working at their respective hotels or whether Walker had checked into the hotels using a pseudonym.

The trial court ordered Lockett to pay Walker $2,809.10 in restitution, and Lockett filed a motion for new trial challenging the restitution amount. The trial court held a hearing on the motion, at which defense counsel argued that "the amount of the restitution awarded included offenses the defendant was not criminally responsible for" and that the State had failed to meet its evidentiary burden and "establish proximate cause." The State replied that the full restitution amount "was from the hotel expenses" and that it had been reasonable for Walker to "need to leave her home in order to be safe and stay at these hotels while the case was going on." Asked by the trial court to address defense counsel's argument "that a portion of the restitution . . . related to cases that were dismissed," the State answered:

> Mr. Lockett had a lot of cases against this same victim. One of the cases and I don't have all of them in front of me but one of the cases, he either pled or admitted his guilt on under 12[.]45 was a stalking charge and/or continuous family violence that covered all of these hotel dates. Now, yes, the other incidents happened in that range but the stalking that overall he admitted his guilt to is covered, that all of the hotel stays were all within the date range that was alleged.

The trial court denied the motion for new trial. This appeal followed.

4

**DISCUSSION**

Lockett contends that the trial court abused its discretion by ordering that he pay Walker $2,809.10 in restitution because the amount included losses "for cases that were dismissed against [him]" and "that were not proximately caused by [his] criminal acts."[2]

## I.    Standard of Review

For purposes of Texas's principal restitution statute, article 42.037 of the Code of Criminal Procedure, a "victim" means "any person who suffered loss as a direct result of the criminal offense," a phrase incorporating "the notion of both actual and proximate causation." *Hanna v. State*, 426 S.W.3d 87, 94–95 (Tex. Crim. App. 2014); *see* Tex. Code Crim. Proc. art. 42.037(a), (c)(1).   Due process imposes additional limitations on a trial court's ability to order restitution:

> (1) the restitution ordered must be for only the offense for which the defendant is criminally responsible; (2) the restitution must be for only the victim or victims of the offense for which the defendant is charged; and (3) the amount must be just and supported by a factual basis within the record.

*Burt v. State*, 445 S.W.3d 752, 758 (Tex. Crim. App. 2014).

We review a trial court's restitution order for an abuse of discretion. *Fuelberg v. State*, 447 S.W.3d 304, 317 (Tex. App.—Austin 2014, pet. ref'd) (citing *Cartwright v. State*, 605 S.W.2d 287, 289 (Tex. Crim. App. 1980)).   An abuse of discretion does not occur unless the

---

[2] Lockett's first issue—which concerns the appropriateness of the trial court's restitution order and article 42.037's requirement that property-loss restitution be for losses resulting from an adjudicated offense—is distinct from a sufficiency challenge. *See* Tex. Code Crim. Proc. art. 42.037(c)(1), (k).   Lockett raised three issues in his motion for new trial:   (1) "the amount of restitution awarded included offenses for which the Defendant was not criminally responsible," (2) "the State was unable to meet its evidentiary burden of a preponderance of the evidence," and (3) "the State failed to establish proximate cause."   Only the first and third issues were raised and briefed on appeal.

trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). In other words, we may not reverse the trial court's ruling unless the "decision falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). Failure to adhere to the three limitations identified by the Court of Criminal Appeals is an abuse of discretion. *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd).

## II.     Dismissed Offenses

In his first issue, Lockett contends that the trial court abused its discretion by ordering restitution for losses accrued by Walker from the two charges that were dismissed as part of Lockett's plea agreement.[3] Specifically, he argues that the trial court ordered restitution to reimburse Walker for staying at hotels on dates that fell outside those alleged in the indictments for the offenses considered under section 12.45 but inside the dates alleged in the indictments that were dismissed.

We conclude that Lockett has failed to present a record demonstrating that the trial court abused its discretion by ordering restitution resulting from dismissed charges.

---

[3] Lockett does not contest the trial court's statutory authority to order restitution for offenses to which he admitted guilt under section 12.45. *See* Tex. Penal Code § 12.45(a). This issue has seemingly never been directly addressed by a Texas court. However, the Court of Criminal Appeals has stated in dicta:

> Nor may a trial court, without the agreement of the defendant, order restitution to other victims unless their losses have been adjudicated . . . . Losses caused by unadjudicated offenses that a defendant has admitted and requested the court to take into account, *see id.* § 12.45, may be regarded as adjudicated.

*Campbell v. State*, 5 S.W.3d 693, 697 & n.9 (Tex. Crim. App. 1999). We need not decide the issue in this case. *See* Tex. R. App. P. 47.1.

*See Newman v. State*, 331 S.W.3d 447, 450 (Tex. Crim. App. 2011). As the appellant, Lockett "carries the burden to ensure that the record on appeal is sufficient to resolve the issues presented." *Williams v. State*, 662 S.W.3d 452, 464 (Tex. Crim. App. 2021); *see Davila v. State*, 623 S.W.3d 1, 11 (Tex. App.—Austin 2020, pet. ref'd) ("Our law 'imposes . . . [a] burden on the appealing party to make a record demonstrating that error occurred in the trial court.'" (quoting *Davis v. State*, 345 S.W.3d 71, 77 (Tex. Crim. App. 2011))). "The failure to provide a sufficient appellate record precludes appellate review of a claim." *London v. State*, 490 S.W.3d 503, 508 (Tex. Crim. App. 2016).

The record in this case is insufficient to compare the dates of Walker's hotel stays for which the trial court ordered restitution with the dates of the indictments for the dismissed offenses or offenses considered under section 12.45. Neither Walker's hotel bills, Lockett's affidavits, the indictments from the dismissed cases, nor the indictments for the offenses to which he admitted guilt under section 12.45 are included in the appellate record. The only evidence of the dates of the losses for which the trial court ordered restitution were Walker's testimony and bank statements. Although Walker testified during the first hearing that the purchases—including hotel rooms—necessitated by Lockett's conduct ranged from September 16, 2021, through December 10, 2021, we cannot compare that range of dates with the dates alleged in any of the indictments because Lockett failed to ensure their inclusion in the record, including during the proceeding on his motion for new trial. *See Rideaux v. State*, 498 S.W.3d 634, 639 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("An appellant may file a motion for new trial or a formal bill of exception to develop facts necessary to present a sufficient record on appeal.").

7

Although Lockett included purported copies of the indictments in an appendix attached to his brief and recites various dates in arguing the issue, neither the appendix nor Lockett's brief is evidence that we may consider in this appeal. *See Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (disallowing supplementation of appellate record with document from another case); *see also Estrada v. State*, No. 14-17-00410-CR, 2018 WL 5914504, at *3 (Tex. App.—Houston [14th Dist.] Nov. 13, 2018, pet. ref'd) (mem. op., not designated for publication) (stating that court of appeals could not consider documents attached as appendix to appellate brief because they "were filed in a different proceeding and are not part of the record"); *Williams v. State*, No. 07–12–00285–CR, 2013 WL 4779728, at *1 (Tex. App.—Amarillo Sept. 5, 2013, no pet.) (mem. op., not designated for publication) (explaining that "appellant has not presented us with an appellate record sufficiently adequate to resolve the dispute, and his attaching the missing document to his brief does not fill the void.").

Moreover, while Lockett has not asked that we take judicial notice of the indictments, we could not do so in these circumstances. *See Fletcher v. State*, 214 S.W.3d 5, 7 (Tex. Crim. App. 2007) ("[T]he general rule is that an appellate court cannot go to the record of another case for the purpose of considering [evidence] found there but not shown in the record case before it."); *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987) (cautioning that appellate court "could not look to records in other cases to supply factual deficiency in the case before it"); *see also Urban v. State*, 387 S.W.2d 396, 398 (Tex. Crim. App. 1965), *overruled on other grounds by Smith v. State*, 450 S.W.2d 618, 622 (Tex. Crim. App. 1970) ("We doubt that it would have been proper for a court to have judicially noticed a vitally contested bit of imperative proof, such as the three essential dates in the indictment.").

Accordingly, as a result of Lockett's failure to provide a sufficient appellate record to show reversible error, there is no evidence in the record from which we can conclude that the trial court ordered restitution for offenses that were dismissed under the plea agreement or for dates falling outside those alleged in the indictments for the offenses to which Lockett admitted guilt under section 12.45. *See Williams*, 662 S.W.3d at 464; *London*, 490 S.W.3d at 508. We therefore overrule his first issue.

## III. Proximate Cause

In his second issue, Lockett contends that the trial court abused its discretion by ordering restitution for losses that were not proximately caused by his criminal conduct. He argues that Walker's losses were "too remote from [his] criminal actions," that the offenses to which he admitted guilt under section 12.45—continuous family violence and repeated violation of a protective order—do not "contemplate[] economic damage," and that her "decision to go to a hotel instead of calling the police [wa]s too attenuated from [his] conduct to have been proximately caused by it."

For a victim to be eligible for a restitution payment, the State must prove by a preponderance of the evidence that the victim's loss foreseeably resulted from an offense for which the defendant was criminally responsible. *Hanna*, 426 S.W.3d at 95. "It is not enough to show that the defendant caused the damage; the State must show that the *offense* . . . caused the damage." *Johnson v. State*, 680 S.W.3d 616, 619 (Tex. Crim. App. 2023). "This proximate cause limitation focuses on whether the conduct and circumstances in the particular case created a foreseeable risk." *Lawson v. State*, 64 S.W.3d 396, 399 n.13 (Tex. Crim. App. 2001) (Cochran, J., concurring). *But see Cyr v. State*, 665 S.W.3d 551, 560 (Tex. Crim. App. 2022) (explaining

9

that "[f]oreseeability is an implicit requirement for causation that criminal law addresses through culpability" and that "[w]hen the State proved the necessary mens rea, it likewise proved 'proximate causation' as that term is used in the civil counterpart to criminal causation").

Continuous family violence involves "a series of at least two bodily-injury assaults committed within a certain 12–months–or–less period against a single victim in a dating relationship with" a defendant. *Ellison v. State*, 425 S.W.3d 637, 648 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see* Tex. Penal Code §§ 22.01(a)(1), 25.11(a). A person commits the offense of repeated violation of a protective order if, during a period that is twelve months or less in duration, he two or more times violates an order listed in Penal Code subsection 25.07(a) by committing family violence against, threatening or harassing, or going near a protected individual; possessing a firearm; or tracking or monitoring a protected individual's personal property or vehicle without her consent. *See* Tex. Penal Code §§ 25.07(a), .072(a).

There was sufficient evidence from which the trial court could have reasonably determined that the State had proven proximate cause by a preponderance of the evidence. Lockett admitted to committing against Walker the offenses of continuous family violence and repeated violation of a protective order. Walker testified that Lockett had "stalked her"; that she was unable to go home for three months; that she had to stay in hotels during that time; and that when she tried to go home, "he would chase [her,] and [she] had to go on high[-]speed chases from him." She had to stay at hotels because "Lockett was threatening to kill [her]," and she was "afraid for [her] life" and afraid that he "was going to kill [her] or set [her] house on fire with [her] in it." All of her hotel fees "stemm[ed] from incidents caused by Mr. Lockett that made [her] unable to go to [her] home." The trial court did not abuse its discretion by finding that Walker's hotel expenses were a foreseeable result of Lockett repeatedly assaulting, chasing,

going near, or threatening her. *See Johnson*, 680 S.W.3d at 619; *Lawson*, 64 S.W.3d at 399 n.13 (Cochran, J., concurring). And although Lockett argues that Walker's failure to go to the police rendered her hotel stays too attenuated, she in fact testified that "law enforcement [was] involved" during the period of her "not being able to live in her house."

Lockett asserts that we should be guided by our sister court's decision in *Lemos*. The facts of that case are, however, distinguishable. Lemos was convicted of aggravated robbery in connection with a grocery-store robbery in which the store's owner was killed. 27 S.W.3d at 44. The trial court sentenced Lemos to probation and ordered him to pay, as a condition of his probation, restitution for the owner's funeral expenses, ambulance and medical fees incurred by his widow, therapeutic services for the widow and her daughter, lost income, and the loss of perishable goods from the store. *Id.* at 44–49. Over $20,000 of goods, or "a substantial portion of the store's perishable inventory," reportedly spoiled after the owner's death because his widow was "too distraught after her husband's death to tend to the store." *Id.* at 47.

Our sister court concluded that the trial court had abused its discretion by ordering restitution for the perishable goods because the record did not establish that their loss resulted from the robbery. *Id.* In reaching its conclusions, the court noted that the property damage did not occur during the offense but only "during the days (and possibly weeks) following [the owner's] death." *Id.*

Conversely, there is no evidence in the record that Walker's hotel stays were not contemporaneous with the offenses to which Lockett admitted guilt under section 12.45. To the contrary, she testified that the stays were directly caused by his actions. While we cannot definitively say—once more owing to the record's deficiencies—that these actions formed the basis for the offenses considered under section 12.45, we must view the evidence in the light

11

most favorable to the trial court's ruling. *See State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021) ("The abuse of discretion standard is a deferential standard of review that requires appellate courts to view the evidence in the light most favorable to the trial court's ruling." (internal quotation marks omitted)). Moreover, there is a much greater degree of foreseeability—and firmer causal nexus—between repeated assaultive, threatening, and harassing conduct toward a dating partner and the victim's fleeing to a hotel than there is between a robbery and the spoliation of perishable goods after a potentially substantial passage of time. We overrule Lockett's second issue.

## CONCLUSION

Having overruled both of Lockett's issues, we affirm the trial court's restitution order.

_____

Maggie Ellis, Justice


Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed:   August 21, 2025

Do Not Publish

12